## LARA, ROSS & CO., APPELLANTS, VS. GREELEY AND BLAISDELL, APPELLEES.

1. A. contracts with B. to do certain work. One of the stipulations of the contract is that payments shall be made to B. when the work contracted for shall have been inspected and accepted, A. reserving ten per cent. from each payment until the whole work shall have been inspected and accepted ; A. to have power in case of B's failure to perform the work faithfully, to annul the contract. The reserved percentage in such event was to be forfeited. B. contracts with C. to do the work upon like terms as existed between himself and A. C. performs a part of the work but fails to complete it and abandons it. B. completes the work and collects the money due on the entire contract : *Held*, That C. is not entitled to the ten per cent. retained from amounts due him for work done by him under his contract with B.

2. Where the testimony of plaintiff is that the contract upon which he sues was made at a certain place, and in the presence of named disinterested parties, and these parties when examined deny any knowledge of such contract, plaintiff's testimony must be rejected in the determination of the cause.

Appeal from the Circuit Court for Duval county.

The case was tried before Mr. H. H. Buckman as Referee.

The facts of the case are stated in the opinion.

*Fleming & Daniel* for Appellants.

*R. B. Archibald* for Appellees.

This is an action to recover a balance due for labor and materials where the plaintiffs partly performed the contract

and which part performance was accepted by the defendants and was of value to them, but plaintiffs did not perform the entire contract within the time specified in the contract.

Where work done under a contract has been accepted the contractor is entitled to the contract price, less the cost of completing his unfinished contract. Howard vs. City of Oshkosh, 37 Wis., 242. Same principle held in Lee vs. Beebe, 13 Hun., N. Y., 89; Cunningham vs. Morrell, 10 John., 203.

In this case, Greeley and Blaisdell vs. Lara,Ross & Co., it was agreed by and between the parties to the contract that periodically there should be an inspection of the work done and if accepted by the government engineer making such inspection the plaintiffs were to be entitled to pay for such accepted portion, less ten per cent. This rendered the contract severable. 2 Parsons on Contracts, 6th Ed., pages 517 and 518; Woods vs. Russell, 5 B. and Ald., 942; Clark vs. Spence, 4 A. & E., 448; Laidler vs. Burlinson, 2 M. and W., 602; Cunningham vs. Morrell, 10 John., 203.

But even in cases where the contract is not severable, where a party has done work and furnished materials which another has retained and accepted, the law implies a promise on the part of the latter to pay what would be a reasonable price, less any damages which the latter may have sustained by reason of the non-performance of the entire contract. 2d Parsons on Contracts, 6th Ed., page 523; Tunno, and Jessup & Co. vs. Robert, 16 Fla., 738; Rule stated on page 744 and cases therein cited; Sickles vs. Pattison, 14 Wend., 257.

The evidence in this case shows that the latter portion of the work done and materials furnished by the plaintiffs for the defendants was performed and furnished, accepted and partly paid for by the defendants, after date for com-

pletion of the contract, showing a waiver of the condition in the contract as to time of completion of the work. 18 Barbour, (s. c.) 112 ; Matthew, 18th chap., 23d verse.

We further claim that when the agreement was made at the Carlton House it was agreed that defendants should complete the work and give up plaintiffs' bond, and that plaintiffs should have "all they had earned," which included the 10 per cent. sued for.

MR. JUSTICE WESTCOTT delivered the opinion of the court.

This is an appeal from the Circuit Court for Duval county, the trial and judgment being by a referee.

The action was assumpsit and the causes of action set up were amounts due under an alleged special contract, and amounts alleged to be due for work done and materials furnished by plaintiffs, Greeley and Blaisdell, to defendants, Lara, Ross & Co. The referee gave judgment for plaintiffs, and from this judgment this appeal is taken.

There are two written contracts in the case and one alleged verbal contract. Out of the two written contracts the claim for work and labor arises, and the verbal contract is subsequent to the written contracts and is also based upon what happened under the two written contracts. It is thus apparent that the consideration of the claim for work and labor under the written contracts first will save a repetition of the statement of the nature of such contracts when we come to consider the claim under the special contract, and will at the same time earlier disclose the material facts and merits of the controversy.

The claim is for work and material furnished under a contract not fully performed. The first position is that whether the contract be entire or severable plaintiffs were

entitled to recover the amount claimed under their *quantum meruit* and *valebant* counts.

On the 4th September, 1880, defendants, Lara, Ross & Co., entered into a contract with the United States, through its proper engineer officer, General Q. A. Gilmore, for the construction of jetties at the entrance to Cumberland Sound, between Georgia and Florida. This contract is very lengthy, embracing various specifications as to the nature of the materials out of which the jetties were to be constructed, and other matters, a knowledge of which is not necessary to the understanding or determination of this controversy. The provisions of the contract, so far as necessary to the determination of this case, were as follows: That Lara, Ross & Co. should furnish all the materials for and construct certain jetties at the entrance to Cumberland Sound in accordance with the requirements of the specifications contained in the proposals of the United States, dated August 31, 1880; that " payment should be made to the said Lara, Ross & Co. when the work contracted for shall have been inspected and accepted, reserving ten per cent. from each payment *until the whole work shall have been inspected and accepted ;*" that in the event Lara, Ross & Co., in the judgment of the engineer in charge, failed to prosecute the work faithfully and diligently in accordance with the specifications and requirements of the contract, the party of the first part, General Q. A. Gilmore, as the representative of the United States, with the sanction of the Chief Engineer, should have power to annul the contract by giving notice in writing to that effect, and upon the giving of such notice all money or reserved percentage due, or to become due, to Lara, Ross & Co. by reason of this contract shall be and become forfeited to the United States; that if the delay is occasioned by no fault of Lara, Ross & Co., but by force or violence of the elements, additional

time might be allowed, and that the government, in case of failure, might provide for the further prosecution of the work; that monthly inspections were to be made by the engineer in charge and a payment of ninety per cent. of the contract price made if the work was satisfactory.

This contract was dated September 4, 1880. The date at which the work was to be completed is stated by appellants' attorney to have been the 30th June, 1881. This is not denied, so far as we can ascertain, and we take it to be correct.

On February 1st, 1881, an agreement was entered into by Lara, Ross & Co. with Greeley and Blaisdell, by which Lara, Ross & Co. appointed Greeley and Blaisdell their agents and attorneys to furnish all the material, do all the work and receive all the moneys under their (L., R. & Co's.) contract before stated. The parties also stipulated that the work was to be done as set forth in the contract between Lara, Ross & Co. and the United States and the specifications thereunto attached.

This is the substance of the two written contracts, so far as we think their provisions material in the determination of this case.

Greeley and Blaisdell commenced the work. After much delay and repeated complaints by the officers in charge, Greeley and Blaisdell having failed to carry out their contract with Lara, Ross & Co., the contract between Lara, Ross & Co. was cancelled, each of the firms agreeing to the cancellation and signing the paper.

Greeley and Blaisdell received all but the reserved ten per cent. up to the time they ceased to comply with their contract.

They were paid:

September 14, 1881...................................... $5,506.24
March 2, 1882.......................................... 526.30

June 20, 1882........................................... 3,890.00

$9,922.54

Lara, Ross & Co., then, under the supervision of the officers of the government, completed their contract with the government and received the full sum due, including the ten per cent. reserved from the work performed by Greeley and Blaisdell, as their agents, and under the agreement between them. This is what Greeley and Blaisdell claim under their *quantum meruit* and *valebant* counts. Are they entitled to it? The evidence discloses that there was no privity between Greeley and Blaisdell and the United States, the representatives of the government dealing exclusively with Lara, Ross & Co., and having no connection with Greeley and Blaisdell except as the agents of Lara, Ross &. Co. This is shown by the testimony of General Gilmore, by the method of payment, and, indeed, by the contracts themselves upon their face. The vouchers for the work done by Greeley and Blaisdell were made out in the name of Lara, Ross & Co., and payments were made to Greeley and Blaisdell by transfer or assignment of this paper. All that existed here was a knowledge upon the part of the officers of the government that Greeley and Blaisdell were acting for Lara, Ross & Co., and under contract with them. I cannot discover from this record that the United States had even any positive knowledge of the contract between Lara, Ross & Co. and Greeley and Blaisdell at the time it was entered into. The measure, the nature and the extent of the reciprocal obligations existing between Lara, Ross & Co., and Greeley and Blaisdell, were fixed by reference to the terms of the contract between the United States and Lara, Ross & Co. so far as these terms could be made applicable. This, with the knowledge by the United States that Greeley and Blaisdell were acting as sub-contractors, did not create any privity of contract be-

tween the United States and Greeley and Blaisdell. The contract between the government and Lara, Ross & Co. was admissible here only as showing the nature of the contract between Greeley and Blaisdell and Lara, Ross & Co., and not as showing the contract between the government and Lara, Ross & Co., except for that purpose and to that extent.

Much has been said in this case in argument and upon brief as to this question of recovering for the work and value of materials furnished where the contract was entire and there was only part performance. We think those questions have no place here, for whatever may be the rule upon the subject, it does not apply where the parties themselves agree as to the result of a non-performance in the particular in which a non-performance has occurred. The whole theory upon which these recoveries are permitted is that the parties not having agreed as to the result of non-performance to the extent it exists, the party accepting the service will be held to pay to the extent he has been benefited. Says Mr. Justice Parker in Britton vs. Turner, 6 N. H., 481: "The party who contracts for labor merely, for a certain period, does so with full knowledge that he must, from the nature of the case, be accepting part performance from day to day, if the other party commences the performance, and with the knowledge also that the other may eventually fail of completing the entire term. If, under such circumstances, he actually receives a benefit from the labor performed, over and above the damage occasioned by the failure to complete, there is as much reason why he should pay the reasonable worth of what has thus been done for his benefit, as there is when he enters and occupies the house which has been built for him, but not according to the stipulation of the contract." But, says the court: " If parties choose to provide by express agreement that nothing shall

be earned if the laborer leaves his employer without having performed the whole service contemplated, then there can be no pretence for a recovery if he voluntarily deserts the service." This case goes as far as any case in the United States to sustain recoveries under *quantum meruit* and *valebant* counts in case of part performance of entire contracts and the application of the rule it announces cannot be objected to by Greeley and Blaisdell here. In this case the contract is express that this ten per cent. sought to be recovered was to be retained and not to be paid to Greeley and Blaisdell unless they completed the work which they contracted to do. They abandoned the work, Lara, Ross & Co., carried out their contract with the United States, and being paid the ten per cent. from the government it is theirs. This is not the case of non-performance of an entire contract where the result of non-performance is not provided for or stipulated in which the party may recover for what he did or furnished. It is the case of non-performance where the result of non-performance to the extent it existed is agreed upon by the parties.

There only remains to be considered the claim of Greeley and Blaisdell to recover under the alleged special contract.

The burden of proof here is upon Greeley and Blaisdell to establish this alleged special contract. They here fail to do so. Every person present at the time the alleged contract was made swear that they heard no such transactions as the interested parties testify occurred here. Where the testimony of a plaintiff is to the effect that the contract upon which he sues was made at a certain place and in the presence of named disinterested parties, and these parties unanimously deny the making of such contract in their presence it is going too far to accept the testimony of the

plaintiff instead of such disinterested parties. Plaintiffs testimony is here overwhelmingly overthrown.

Judgment reversed and there will be final judgment for appellants, including costs in the Circuit Court appearing by the record to have been paid in that court by them as well as for the costs in this court.

The appellee filed a petition for a rehearing.

The opinion denying a rehearing was delivered by MR. JUSTICE WESTCOTT.

The rehearing is denied. The contract is as we have stated it at length in the opinion.

The basis of this petition is the idea that in case Greeley and Blaisdell failed to complete the contract they were to be entitled to the ten per cent. reserved if Lara, Ross & Co. did complete the work and receive it from the United States. That was not the contract. Simply reading it will disclose that there was no privity between G. and B. and the United States. G. and B. agreed that L., R. & Co. should retain this ten per cent. if they violated this contract. They have violated their contract and must abide by the consequences of their own act as between L., R. & Co. and G. and B. L., R. & Co. had a right to retain the ten per cent. I have not the least doubt of the correction of the conclusion reached.